# Exhibit B

| | |
|---:|:---|
| **From:** | "Andrew W. Semenchuk" </O=SSI MAIL/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=AWSEMENCHUK> |
| **To:** | "Tony Thelen" <tthelen@ssi-mi.com>, "Adam Ball" <First Administrative Group/cn=Recipients/cn=aball>, "Brian Bartlett" <bbartlett@ssi-mi.com>, "Jeffrey Bartlett" <jbartlett@ssi-mi.com> |
| **Subject:** | Some interesting articles about Common control and the Audit process. |
| **Date:** | Thu, 01 May 2014 10:36:59 +0000 |
| **Importance:** | Normal |
| **Attachments:** | govnews_october12.pdf |

---

http://www.farmaster.com/farmaster/data/idx/Dcaam/0702060002.htm

**#3025936.1**



# INSIGHTS
**A MONTHLY PUBLICATION FOR GOVERNMENT CONTRACTORS**

*Volume 20*  OCTOBER 2012

## ASBCA Case No. 57795: Flowers, Parties and Unified Jazz Ensemble = Unallowable Entertainment

*By Michael E. Steen, CPA, Technical Director at*
*Redstone Government Consulting, Inc.*

In its October 4, 2012 decision, the ASBCA agreed on all counts with the Defense Contract Audit Agency (DCAA) and the Defense Contract Management Agency (DCMA) finding that incurred and billed Thomas Associates, Inc. entertainment and other costs were expressly unallowable and therefore subject to penalties without qualification. In ASBCA case 57795, the counts or issues involved five indirect cost items as well as the application of FAR 42.709-1(a)(1), penalties for expressly unallowable costs on contracts subject to the allowable cost and payment clause, FAR 52.216-7. Although this case may have facts and circumstances which are not identical to the facts and circumstances applicable to other contractors, ASBCA No. 57795 still provides some universal lessons for all contractors subject to DCAA audits of indirect cost rate proposals.

The five issues before the ASBCA involved two sub-issues; one, the distinction between allowable employee morale and welfare costs (FAR 31.205-13) and unallowable entertainment costs (FAR 31.205-14) and secondly, an issue of unallowable rental costs involving a related party (common control) lease (FAR 31.205-36(b)(3)). The following is a brief description of each sub-issue, noting that in all cases the DCAA/DCMA interpretation prevailed, all costs were deemed expressly unallowable and the contractor was ultimately responsible for penalties based upon expressly unallowable amounts allocated to cost-plus fixed fee contracts.

- Pintail Point Club including a corporate deluxe membership (privileges to five contractor executives) encompassing sporting clay shooting instructions, tournaments and fishing trips. ASBCA rejected contractor assertion that these costs were to improve employee morale, fitness and teamwork (editor's note: apparently fishing and/or clay shooting doesn't really contribute to health and fitness).

### THIS ISSUE:



❖ ASBCA Case No. 57795: Flowers, Parties and Unified Jazz Ensemble = Unallowable Entertainment

❖ DCAA: Re-writing FAR 4.703 within DCAA Audit Policy on Scanning Records

❖ Tightening Allowable Contractor Employee Wages: The Debate Continues

❖ DOD IG Finds Pentagon Not Following Own Guidance in Tracking Sole-Source Contracts

❖ Training Opportunities

- Unified jazz ensemble, a separate expense during an official corporate event and considered expressly unallowable entertainment by the ASBCA (editor's note: other costs associated with the corporate event were apparently not questioned by DCAA).
- Flowers for employees (births, illness, death, weddings) were considered by the ASBCA to be a "cost free gesture to employees…nothing more than a gift which is expressly unallowable under FAR 31.205-14": (editor's note: this is particularly disconcerting because many consider these expenses to be allowable employee morale and welfare at the very least subject to interpretation and certainly not "expressly unallowable").
- Office rent involving real property owned by the owner of the contractor and/or owned by a related party for which the ASBCA concluded this was sufficient to establish common control in which case allowable rent is limited to constructive cost of ownership. The contractor asserted that the rent was well below comparable commercial rents/leases; unfortunately this "market comparison" has no relevance in determining allowable or unallowable costs under FAR 31.205-36(b)(3).
- Christmas party which was after a corporate meeting and per the contractor, the party also served as a banquet to recognize employees. Unfortunately, the contractor had previously lost an identical issue before the ASBCA; hence, the contractor was dead on arrival in disputing the same issue (the issue previously decided against the contractor applied to the 2005 Christmas party, the recent ASBCA case involved the same party, but in 2004). In the current decision, the ASBCA noted that the party included 26 hours of activities and at most, the corporate meeting involved 2 of those 26 hours and the majority of the attendees were not contractor employees.

Regarding the application of the FAR 42.709 penalties for claiming expressly unallowable costs (as allowable) within a certified indirect cost rate proposal, the contractor argued that the penalties should be waived because it was a novice contractor which has now learned the regulations and government expectations. Unfortunately as the ASBCA stated, there is no provision for waiving the penalties for new contractors (editor's note: in fact there is absolutely no concept of a "learner's permit" for government contractors, no one should engage in government contracting without knowing the regulations and risks, and never assume that the government has a "sensitive or benevolent" side when dealing with government contractors).

As previously stated, the facts and circumstances in ASBCA No. 57795 maybe somewhat unique, but the ASBCA decisions have very unfavorable implications to any contractor trying to distinguish between allowable employee morale/welfare costs and unallowable entertainment. As it relates to flowers for employees, it doesn't matter that this is a common practice across Corporate America, apparently the ASBCA expects the contractor to i) not claim these costs or ii) give the flowers to the employee, but then reduce the employee's pay to offset the cost.

## DCAA: Re-writing FAR 4.703 within DCAA Audit Policy on Scanning Records

*By Michael E. Steen, CPA, Technical Director at Redstone Government Consulting, Inc.*

DCAA has apparently assumed sole authority for writing or re-writing the FAR (Federal Acquisition Regulations), in this case as it relates to "Transfer of Records from Hard Copy to Computer Medium" or more succinctly, records scanning as defined in FAR 4.703(d). The actual requirements in FAR are limited to three very basic criteria:

- Scanned records must preserve accurate images including signatures and other graphic images,
- Effective indexing system to permit timely and convenient access to imaged records,
- Original records retained for one year after imaging to permit periodic validation of the imaging system.

In stark contrast to the actual regulations, DCAA's CAM (Contract Audit Manual) refers to FAR 4.703(d) which was effective February 27, 1995 inclusive of the following "requirements"--the listing which follows is only a partial extraction of DCAA's list which is an egregious misrepresentation of the actual requirements of the FAR; moreover, it totally defies all logic that DCAA's long list of "FAR 4.703(d) requirements" never existed anywhere until DCAA magically and unilaterally authored them within DCAA's internal contract audit manual.



Case 1:23-cr-20676-TLL-PTM   ECF No. 194-2, PageID.2114   Filed 02/05/25   Page 5 of 9

- Records retention FAR 4.7 requirements must be satisfied,
- An audit trail describing the data transfer,
- A transfer process which includes all relevant notes and worksheets necessary for reconstructing or understanding the records (this also includes back-up procedures),
- Adequate internal control including segregation of duties particularly between those responsible for maintaining the General Ledger and those responsible for the transfer process,
- A procedure prohibiting records destruction during the implementation phase until it can be shown that the system is actually providing acceptable copies,
- An acceptable system of continuing surveillance over the transfer system; this includes periodic comparisons and internal audits,
- Adequate procedures for periodic internal and external audit,
- Adequate procedures for labeling and storing the computer medium; these should meet the minimum standards prescribed by the National Archives and Records Administration (NARA),
- Adequate procedures for random sampling and testing of all records as prescribed by NARA,
- Procedures for retrieval of retained records at the time of audit including provisions for government access to the computer resources (terminals, printers, etc.).

Unfortunately, this is but one example of DCAA's implied declaration of independence from anything actually stated in FAR notwithstanding that government contracts include FAR clauses and not DCAA's preference for what these clauses should state. Perhaps the most egregious aspects of DCAA's contract audit manual is to include a totally misleading introductory paragraph which states without qualification that FAR 4.703(d) permits the contractor to retain the records in any medium or combination of media **if the following requirements** are met—and DCAA's version of requirements is a list of 17 requirements whereas the real deal (FAR 4.703(d)) only lists three very basic requirements.

It is noteworthy that in the mid-1990s, on multiple occasions DCAA authored audit policies which were at odds with the actual regulations and at the time, the Director for DDP (which is now DPAP, Defense Procurement Acquisition Policy), publicly embarrassed DCAA by directing DCAA to withdraw those audit policies. Apparently DPAP no longer has any interest in re-directing DCAA regardless of DCAA's wayward interpretations of the regulations. Equally apparent and more disconcerting, no one in DPAP or DOD cares that DCAA's wayward interpretations are resulting in unnecessary administrative costs (for costs to change contractor systems to accommodate DCAA's non-regulatory based demands) as well as the costs of contract disputes which will ultimately be decided based upon the regulations and not DCAA's re-interpretation of those regulations.

Until someone with authority re-directs DCAA, they will continue with their unofficial motto: "We prefer to believe what we prefer to be true". DCAA seemingly reinforces its unofficial "we believe" motto with its interpretation of auditor independence (reference to government auditing standards) as independent of the actual contract terms and conditions.

## Tightening Allowable Contractor Employee Wages: The Debate Continues

*By Darryl L. Walker, CPA, CFE, CGFM, Technical Director at Redstone Government Consulting, Inc.*

Pressure continues to mount for Congress to adopt the Senate language in a bill that would place an annual $230,700 cap on individual contractor employee wages that could be claimed for reimbursement within certain DOD government contracts.

Adopting that ceiling would constitute a $532,329 reduction in the existing regulatory annual compensation ceiling ($763,029); moreover, the reduced cap would apply to every contractor employee, a continuation of the change effected with the 2012 DOD Appropriations Act (for DOD contracts, this cap is no longer limited to the top five employees in management positions as currently stipulated in FAR 31.205-6(p)).

Heads of notable national labor unions and leaders of public interest groups sent an October 18 letter to the Senate and House Armed Services Committee chairpersons urging



lawmakers to adopt that annual wage ceiling as currently delineated in the National Defense Authorization Act of 2013.

Making their case that contractor employees are being paid too much money and therefore bilking the American public, the letter's authors state that "it is fiscally irresponsible to allow private contractors to charge escalating and exorbitant rates to the government". The assertion of "escalating" and "exorbitant" is supported by purported increases in contractor employee wages that have outpaced inflation by 53%, while military personnel received only a nominal increase this year, and federal civilian employee wages frozen.

The letter notes "fiscal responsibility and fairness" is required when faced with budget cuts and sequestration, and the authors invoke a commonly unsupported notion that "compensation levels over $230,000 are not required to find and retain a talented work force" (the unsupported example given: many Nobel Laureates conducting research at government labs work at salaries well below $200K). The letter also states that the President and U.S. Senators make far less money than government contractor employees, so why should those employees, whose salaries are paid for by the government, be any higher (editor's comment: we could have a field-day challenging the actual value derived from those in public office, particularly those incapable of dealing with the deficit, but we won't). The letter summarizes the authors' obvious irritation with Congressional inaction to lower the compensation cap via a concluding statement coated with hyperbole: "It is grossly unfair to expect working people to pay for the inflated salaries for defense contractor employees".

Fueling the frustration of federal labor union leaders with demands to lower allowable contractor employee wage ceilings is a recent study released by the Federal Salary Council which disclosed that "federal employees earn 34.6 percent less pay on average than their private sector peers". That survey contradicts other federal-to-private-sector wage evaluations, specifically by the Cato Institute and Heritage Foundation, which historically concluded that federal employees garner higher paid salaries than private sector personnel in the same job positions, notably professionals in the Information Technology business.

The Senate Armed Services Committee approved a plan to cap reimbursement by the DOD at the $230,700 per contractor employee amount in June 2012, the amount of which was based on the existing annual salary for the Vice-President; however the Senate version has stalled in the House of Representatives, and until the House and Senate can negotiate an agreement, no change to contractor employee wage ceilings will take place.

## DOD IG Finds Pentagon Not Following Own Guidance in Tracking Sole-Source Contracts

*By Darryl L. Walker, CPA, CFE, CGFM, Technical Director at Redstone Government Consulting, Inc.*

A Department of Defense Inspector General (DOD IG) office October 4, 2012 report asserts that the DOD is not adequately following its internal parameters and monitoring policies in awarding contracts on a competitive basis when only receiving a single-source bid. By not following its internal policies, the DOD IG contends that the Pentagon does not encourage adequate competition which significantly diminishes savings to the general public in contract award values.

The IG reviewed a sample 237 contract awards, modifications to contacts, Broad Agency Agreements (BAA) and Small Business Innovation Research (SBIR) awards, totaling almost $2 billion, with the objective of determining if DOD agencies followed award criteria when placing an award with a single bidder after having released a solicitation with the expectation of several competitive bids. The Office of the Under Secretary of Defense for Acquisition, Technology, and Logistics (OUSD [AT&L]) provided several memorandums in the past two years to procurement activities that essentially required a more thorough analysis of single bids in response to a competitive solicitation before making the award to the sole bidder. Guidance focused on analyzing risk of the single offer, performing adequate price analysis, requesting cost information as needed, and re-soliciting the bid if necessary. DFARS was amended in June 2012 to add contracting analysis parameters for awarding a single bid in response to a competitive solicitation.

DOD IG's principal findings include:

- Inadequate identification of certain contracts in the Federal Procurement Data



Volume 20                                                                                                                OCTOBER 2012

- System-Next Generation (FPDS-NG) as single-bid awards;
- Failing to classify BAA and SBIR awards in the FPDS-NG Effective Competition Report as having effective competition;
- Not following the single-bid guidance for certain single-bid contracts
- Insufficient plans to increase competition; and
- Lack of monitoring of certain contract modifications to determine if they exceeded the three-year limitation on awarding contract modifications.

Summary recommendations for ensuring awards to single-bidders, under a competitive solicitation, are adequately vetted by contracting officers via current parameters, include:

- Director, DPAP should routinely and thoroughly review the Services' Competition Advocates competition reports;
- Services' Competition Advocates should prepare guidelines to closely monitor implementation and execution of single-bid guidance; develop a plan to increase competition in their competition plans and 3-year period of performance plans; and monitor the accuracy of contracting officers' FPDS-NG information.
- Services' Competition Advocates should prepare a plan related to the length of contract modifications and improve the DOD Effective Competition Report.

Notably missing from the DOD-IG report is any analysis to confirm that adherence to the DOD policy would actually yield any tangible savings which simply confirms that the DOD-IG charter does not include dispelling myths and assumptions.

# Training Opportunities

**2012 Redstone Government Consulting Sponsored Seminar Schedule (Including Recent Updates)**

**October 30, 2012** – Truth-in-Negotiations Act (TINA) or Defective Pricing
   WEBINAR – CLICK TO REGISTER

**November 13, 2012** – Cost and Price Analysis in Government Contracting
   Huntsville, AL – CLICK TO REGISTER

**November 14, 2012** – Understanding Government Contract Audits and Dealing with Audit Issues
   Huntsville, AL – CLICK TO REGISTER

**November 27, 2012** – Claims and Terminations
   WEBINAR

**December 12, 2012** – NEW! 2013 Government Contractor Challenges
   "Lunch & Learn", Huntsville, AL

**2012 Federal Publications Sponsored Seminar Schedule**

**December 5-6, 2012** – Accounting Compliance for Government Contractors
   Las Vegas, NV

**February 12-13, 2013** – Government Contract Audits: Dealing with Auditors and Mitigating Audit Risk
   Arlington, VA

**February 21-22, 2013** – Accounting Compliance for Government Contractors
   Arlington, VA

**April 10-11, 2013** – Accounting Compliance for Government Contractors
   Orlando, FL

**May 7-9, 2013** – The Masters Institute in Government Contract Costs
   San Diego, CA

**May 14-15, 2013** – Government Contract Audits: Dealing with Auditors and Mitigating Audit Risk
   Las Vegas, NV

**July 8-9, 2013** – Government Contract Audits: Dealing with Auditors and Mitigating Audit Risk
   Hilton Head, SC



*Government Contracts Insight is produced and authored by Redstone Government Consulting, Inc.*                    ©Copyright 2012. *Redstone Government Consulting, Inc.*   5

#3065487.5

Volume 20                                                                                                          OCTOBER 2012

**August 5-6, 2013** – Accounting Compliance for Government Contractors
    Washington, DC

**August 7-8, 2013** – Government Contract Audits: Dealing with Auditors and Mitigating Audit Risk
    Washington, DC

**August 7-9, 2013** – The Masters Institute in Government Contract Costs
    Washington, DC

**October 9-10, 2013** – Government Contract Audits: Dealing with Auditors and Mitigating Audit Risk
    Orlando, FL

**October 21-22, 2013** – Accounting Compliance for Government Contractors
    Arlington, VA

**December 4-5, 2013** – Accounting Compliance for Government Contractors
    Las Vegas, NV

### Instructors
- Mike Steen
- Darryl Walker
- Scott Butler
- Courtney Edmonson
- Cyndi Dunn
- Wayne Murdock
- Asa Gilliland

Go to www.fedpubseminars.com and click on the Government Contracts tab.



*Redstone Government Consulting, Inc. is registered with the National Association of State Boards of Accountancy (NASBA) as a sponsor of continuing professional education on the National Registry of CPE Sponsors. State boards of accountancy have final authority on the acceptance of individual courses for CPE credit. Complaints regarding registered sponsors may be submitted to the National Registry of CPE Sponsors through its website: www.learningmarket.org.*

### Specialized Training
Redstone Government Consulting, Inc. will develop and provide specialized Government contracts compliance training for client / contractor audiences.  Topics on which we can provide training include estimating systems, FAR Part 31 Cost Principles, TINA and defective pricing, cost accounting system requirements, and basics of Cost Accounting Standards, just to name a few. If you have an interest in training, with educational needs specific to your company, please contact Ms. Lori Beth Miller at lmiller@redstonegci.com, or at 800-416-1946.

### About Redstone Government Consulting, Inc.
Our Company's Mission Statement: RGCI enables contractors doing business with the U.S. government to comply with the complex and challenging procurement regulatory provisions and contract requirements by providing superior cost, pricing, accounting, and contracts administration consulting expertise to clients expeditiously, efficiently, and within customer expectations. Our consulting expertise and experience is unparalleled in understanding unique challenges of government contractors, our operating procedures are crafted and monitored to ensure rock-solid compliance, and our company's charter and implementing policies are designed to continuously meet needs of clients while fostering a long-term partnership with each client through pro-active communication with our clients.

In achieving government contractor goals, all consulting services are planned and executed utilizing a quality control system to ensure client objectives and goals are fully understood; the right mix of experts with the proper experience are assigned to the requested task; clients are kept abreast of work progress; continuous communication is maintained during the engagement; work is managed and reviewed during the engagement; deliverables are consistent with and tailored to the original agreed-to scope of work, and; follow-up communication to determine the effectiveness of solutions and guidance provided by our experts.



**Redstone Government Consulting, Inc.**

**Huntsville, AL**
101 Monroe Street
Huntsville, AL  35801
T: 256.533.1720
Toll Free: 1.800.416.1946

Email: info@redstone.com
On the web: www.redstonegci.com

---

*Government Contracts Insight is produced and authored by Redstone Government Consulting, Inc.*    ©Copyright 2012. Redstone Government Consulting, Inc.   6

**#3065487.6**

**From:** "Jeffrey Bartlett" </O=SSI MAIL/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=JBARTLETT>
**To:** "Andrew W. Semenchuk" <semenchuk@ssi-mi.com>, "Tony Thelen" <tthelen@ssi-mi.com>, "Adam Ball" <aball@ssi-mi.com>, "Brian Bartlett" <bbartlett@ssi-mi.com>
**Subject:** RE: Some interesting articles about Common control and the Audit process.
**Date:** Mon, 05 May 2014 12:43:17 +0000
**Importance:** Normal

☐ Office rent involving real property owned by the owner of the contractor and/or owned by a related party for which the ASBCA concluded this was sufficient to establish common control in which case allowable rent is limited to constructive cost of ownership. The contractor asserted that the rent was well below comparable commercial rents/leases; unfortunately this "market comparison" has no relevance in determining allowable or unallowable costs under FAR 31.205-36(b)(3).

I think that the 3SI cost of rent of the office buildings is probably at or below the constructive cost of ownership.  The 2SI survey equipment is probably what we may have an issue with.

**From:** Andrew W. Semenchuk
**Sent:** Thursday, May 01, 2014 6:37 AM
**To:** Tony Thelen; Adam Ball; Brian Bartlett; Jeffrey Bartlett
**Subject:** Some interesting articles about Common control and the Audit process.

http://www.farmaster.com/farmaster/data/idx/Dcaam/0702060002.htm

#3226162.1