UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,               Case No. 23-20676

    v.                      HON. THOMAS L. LUDINGTON
                              United States District Judge

D-1 JEFFREY BARTLETT,
D-2 ANDREW SEMENCHUK,
D-3 ADAM BALL,
D-4 BRIAN BARTLETT, and
D-5 ANTHONY THELEN,

      Defendants.

_____/

## MOTION IN LIMINE REGARDING TESTIMONY BY SPOUSES AND A DOMESTIC PARTNER OF THE DEFENDANTS

The defendants are alleged, in part, to have involved their spouses and a domestic partner in a multi-year fraud scheme against MDOT and USDOT. Specifically, the defendants directed SSI to pay certain of their spouses and a domestic partner annual salaries and bonuses for work they did not perform and included those payments in reimbursable direct labor costs to MDOT. The defendants also used these payroll payments as a means of equalizing (i.e., sharing) annual SSI profits across the defendants. As to defendant Semenchuk's spouse, the defendants

directed Southfield IT Group to issue approximately $776,000 in "loans" to her that would not be repaid as a means to share SSI's annual profits with defendant Semenchuk. The government may call certain of the spouses and the domestic partner of the defendants to testify at trial that, among other things, they did not perform any work for SSI or SSI Group entities during the charged fraud scheme. As to Mrs. Semenchuk, the government may call her to testify at trial that defendant Semenchuk provided a series of checks to her as "loans" that would not be repaid, and asked her to endorse the checks for depositing into her bank account.

The government anticipates that the defendants or their spouses/domestic partner may seek to invoke marital privileges to preclude the trial testimony of these witnesses. Such marital privileges, however, are not available to a domestic partner or to spouses engaged in joint criminal activity. Because the government has not yet decided whether it will actually call these witnesses at trial, it respectfully submits that the defendants need not respond to this Motion immediately, subject to the Court's direction. The government sought concurrence for this motion from counsel for the defendants, and did not receive it.

## Issue Presented

Whether the marital testimonial privileges preclude the trial testimony of the spouses and a domestic partner of the defendants where such privileges do not apply to a domestic partner or spouses who participated in joint criminal activity.

## Principal Authorities

- *Trammel v. United States*, 445 U.S. 40 (1980)

- *United States v. Sims*, 755 F.2d 1239 (6th Cir. 1985)

- *States v. Underwood,* 859 F.3d 386 (6th Cir. 2017)

- *United States v. Van Drunen*, 501 F.2d 1393 (7th Cir.), *cert. denied*, 419 U.S. 1091 (1974)

- *States v. Miller*, 588 F.3d 897 (5th Cir. 2009)

## Relevant Factual Background

A.     In General.

The defendants are charged with conspiracy to commit wire fraud, conspiracy to defraud the United States, and several counts of wire fraud/aiding and abetting. (ECF. 132, PageID.1516–19.) As the Court previously recognized, the charges arise from alleged fraudulent conduct "in three parts," one of which involved the defendants "fraudulently misrepresent[ing] SSI's overhead and labor costs to artificially inflate

3

MDOT's reimbursement." (ECF. 150, PageID.1623.) As to that part, the defendants overbilled MDOT through "two separate schemes flush with fraudulent misrepresentations and omissions." *Id.*, PageID.1630. The artificially inflated direct labor costs scheme involved the defendants fraudulently billing MDOT for "'ghost employees,' including [defendants'] spouses" who performed no work on MDOT projects. *Id.*, PageID.1636-37. Notably, "Defendants' spouses were among the highest-paid 'employees' at SSI, and received hundreds of thousands of dollars in annual bonuses." *Id.* PageID.1637 (citing ECF No. 88-1 at PageID.480 (sealed) ("In FY 2017 alone, SSI included $130,156 in its reimbursable direct labor costs to compensate Defendants' spouses.") And, MDOT allegedly overpaid SSI hundreds of thousands of dollars as a result of defendants' fraudulent payroll misrepresentations. *Id.*

As part of its investigation, the government has interviewed all current spouses and one domestic partner of the defendants. It is still seeking to interview the former spouse of defendant Jeffrey Bartlett. Upon information and belief, none of these individuals performed any work for SSI or SSI Group entities (much less on MDOT contracts) during the relevant period. SSI nonetheless paid all but one—Mrs.

Semenchuk—substantial salaries and bonuses that they later reported as earned income to the Internal Revenue Service. SITG gave Mrs. Semenchuk $776,000 in "loans" that the Semenchuks never intended to or did repay.

B.     The Witnesses.

Because the applicability of marital testimonial privileges must be assessed on an individual basis, a short summary of each witness's marital status and anticipated testimony follows.

1.     B.B. – former spouse of defendant Jeffrey Bartlett

B.B. was married to defendant Jeffrey Bartlett from at least 2008 through 2011. Although B.B. never performed any MDOT-related work for SSI, defendant Jeffrey Bartlett directed her to sign weekly timesheets indicating that B.B. performed such work. Defendants Jeffrey Bartlett, Brian Bartlett, and Anthony Thelen caused SSI to pay B.B. annual salaries and bonuses from approximately 2008 through 2011. Defendants Jeffrey Bartlett, Brian Bartlett, and Anthony Thelen included B.B.'s payroll expenses in SSI's reimbursable direct labor costs to MDOT and otherwise used the payments to B.B. as a means of equalizing annual profit distributions to defendant Jeffrey Bartlett.

2.      J.S. – current spouse of defendant Jeffrey Bartlett

J.S. and defendant Jeffrey Bartlett participated in a marriage

ceremony in Costa Rica, but are not legally married in Michigan.

Although J.S. never performed any MDOT-related work for SSI,

defendant Jeffrey Bartlett directed her to sign weekly timesheets

indicating that J.S. had performed such work. The defendants caused

SSI to pay J.S. a salary and bonuses from at least 2011 through at least

July 2019. Defendants included J.S.'s payroll expenses in SSI's

reimbursable direct labor costs to MDOT and otherwise used the

payments to J.S. as a means of equalizing annual profit distributions to

defendant Jeffrey Bartlett.

3.      J.B. – spouse of defendant Brian Bartlett

J.B. has been married to defendant Brian Bartlett since at least

2011. Although J.B. never performed any MDOT-related work for SSI,

defendant Brian Bartlett initialed weekly timesheets indicating that

J.B. performed such work. From at least 2008 until at least July 2019,

defendant Brian Bartlett and some combination of the other defendants

caused SSI to pay J.B. a salary and bonuses. Defendants included J.B.'s

payroll expenses in SSI's reimbursable direct labor costs to MDOT and

otherwise used the payments to J.B. as a means of equalizing annual profit distributions to defendant Brian Bartlett.

    4.   C.T. – spouse to defendant Anthony Thelen

C.T. has been married to defendant Anthony Thelen since at least 2011. Although C.T. never performed any MDOT-related work for SSI, defendant Thelen directed her to sign weekly timesheets indicating that C.T. performed such work. From at least 2008 until at least July 2019, defendant Thelen and some combination of the other defendants caused SSI to pay C.T. salaries and bonuses. Defendants included C.T.'s payroll expenses in SSI's reimbursable direct labor costs to MDOT and otherwise used the payments to C.T. as a means of equalizing annual profit distributions to defendant Thelen.

    5.   S.B. – spouse to defendant Adam Ball

S.B. has been married to defendant Adam Ball since at least 2011. Although S.B. never performed any MDOT-related work for SSI, defendant Ball directed her to sign weekly timesheets indicating that S.B. performed such work. From at least 2011 until at least 2018, defendant Ball and some combination of the defendants caused SSI to pay S.B. salaries and bonuses. Defendants included S.B.'s payroll

expenses in SSI's reimbursable direct labor costs to MDOT and otherwise used the payments to S.B. as a means of equalizing annual profit distributions to defendant Ball. Defendants also made S.B. a 20% owner of National Elevation Company d/b/a "Southfield IT Group," which served as another means of equalizing annual profit distributions to defendant Ball.

6.   T.S. – spouse to defendant Andrew Semenchuk

T.S. has been married to defendant Semenchuk since at least 2011. T.S. worked as an accountant for the Michigan State Police during that same time period. T.S. never performed any MDOT-related work for SSI or any SSI Group entity. In 2015 through 2017, defendants caused SITG to issue T.S. four checks as purported "loans" from SITG, totaling approximately $776,000. Defendant Semenchuk directed T.S. to endorse the checks, and they were then deposited in a bank account in T.S.'s name. Defendants never intended that T.S. or defendant Semenchuk repay the purported "loans" to T.S. (even though defendant Semenchuk directed T.S. to make several interest-only payments), and the Semenchuks never repaid the "loans." Rather, defendants used the payments to T.S. as a means of equalizing annual profit distributions to

8

defendant Semenchuk. To date, the Semenchuks have never reported the proceeds of the "loans" to the IRS in their annual joint tax returns.

## Argument

The Sixth Circuit recognizes two types of marital privilege. *United States v. Sims*, 755 F.2d 1239, 1240 (6th Cir. 1985) "One privilege is the privilege against adverse spousal testimony" which "vests only in the testifying spouse." *Id.* (citing *Trammel v. United States*, 445 U.S. 40, 53 (1980). The other is "that which protects confidential marital communications," which the defendant may invoke to foreclose testimony of an existing or former spouse about such communications during the marriage. *Id.* at 1241; *see also United States v. Miller*, 588 F.3d 897, 904 (5th Cir. 2009) (the confidential communications privilege applied to confidential marital communications that occurred during the marriage even after the marriage has terminated).

With the adverse spousal testimony privilege, "[t]he witness-spouse alone has a privilege to refuse to testify adversely." *United States v. Underwood*, 859 F.3d 386, 390 (6th Cir. 2017) (citing *Sims*, 744 F.2d at 1240 and quoting *Trammel*, 445 U.S. at 53). "The witness-spouse may be neither compelled to testify nor foreclosed from testifying

under the privilege." *Id.* To qualify as a "witness-spouse," the individual

and defendant must enjoy a marriage that is recognized by state law.

*United States v. Lustig*, 555 F.2d 737, 747 (9th Cir. 1977), *cert. denied*,

434 U.S. 1045 (1978) (neither the marital communications privilege nor

the testimonial privilege applies where the marriage is not valid under

state law, though the couple have lived together as man and wife for

years).

To successfully assert the confidential martial communications

privilege, three requirements must be met: (1) at the time of the

communication there must have been a marriage recognized as valid by

state law; (2) the privilege applies only to utterances or expressions

intended by one spouse to convey a message to the other; and (3) the

communication must be made in confidence. *Underwood*, 859 F.3d at

390 (citing *United States v. Porter*, 986 F.2d 1014 (6th Cir. 1993). If one

exists, the defendant-spouse retains the privilege to foreclose testimony

by the witness spouse regarding confidential marital communications.

*Id.*

> The rationale for each of the two privileges differs. Namely:
>
> The testimonial privilege looks forward with reference to the
> particular marriage at hand: the privilege is meant to

> protect against the impact of the testimony on the marriage.
> The marital communications privilege in a sense, is broader
> and more abstract: it exists to insure that spouses generally,
> *prior to any involvement in criminal activity* or a trial, feel
> free to communicate their deepest feelings to each other
> without fear of eventual exposure in a court of law.

*Porter*, 986 F.2d at 1018 (quoting *United States v. Byrd*, 750 F.2d 585,

590 (7th Cir. 1984).

A mere assertion of a marital privilege, however, does not end the

inquiry. The Sixth Circuit and several others have recognized a joint

criminal activity exception to one or both of the marital privileges. *Sims*

("confidential marital communications are not protected if they pertain

to joint criminal activity of the spouses"); see also *Underwood*, 859 F.3d

at 390 ("For example, we have recognized that confidential marital

communications are unprotected when they pertain to joint criminal

activity") (citing *Sims*, 755 F.2d at 1243.); *see also United States v. Van*

*Drunen*, 501 F.2d 1393, 1396–97 (7th Cir.), *cert. denied*, 419 U.S. 1091

(1974) (applying joint criminal activity exception to the privilege

against adverse spousal testimony); *see also United States v. Clark*, 712

F.2d 299, 300-01 (7th Cir. 1983) (same). Significantly, the testifying

spouse need not be charged with a crime for the joint criminal activity

exception to apply.  *Miller*, 588 F.3d at 904–05 ("The testifying spouse

need not be charged with a crime, so long as the testimony conveys joint

criminal activity." (internal citations omitted)).

In upholding the application of the joint criminal activity

exception to the marital communications privilege, the *Sims* court

relied upon the reasoning for the exception articulated in *Van Drumen*.

755 F.2d at 1241. Namely:

> *Van Drunen* set forth two rationales for its holding that the
> marital privilege against adverse spousal testimony does not
> apply if the witness spouse is a victim or a participant. First,
> the court reasoned that the goals of protecting marital
> privacy and of encouraging frank marital communications do
> "not justify assuring a criminal that he can enlist the aid of
> his spouse in a criminal enterprise without fear that by
> recruiting an accomplice or co-conspirator he is creating
> another potential witness."  Second, the court opined that
> the rehabilitative effect that the marriage may have on the
> defendant spouse is diminished when spouses are joint
> participants in a crime.

*Id.* (internal citations omitted). In short, "[o]nly where spouses engage

in conversations regarding joint ongoing or future patently illegal

activity does the public's interest in discovering the truth about

criminal activity outweigh the public's interest in protecting the privacy

of marriage." *Id.* at 1243.

1.    B.B. – former spouse of defendant Jeffrey Bartlett

12

Either B.B. or defendant Jeffrey Bartlett may assert the marital confidential communications privilege for such communications while they were married. The adverse spousal testimony privilege, however, is not applicable because they are no longer married. *Porter*, 986 F.2d at 1028 (the privilege may not be asserted after a marriage has been terminated).

Should either B.B. or defendant Jeffrey Bartlett assert the marital confidential communications privilege for such communications while they were married, it should not apply to any communications about: (1) B.B.'s signing, at defendant Jeffery Bartlett's direction, false SSI timesheets indicating that B.B. worked there; (2) SSI paying B.B. for work she did not perform for SSI; and (3) B.B. and defendant Jeffery Bartlett's filing false annual tax returns that reported SSI payments to B.B. as earned and taxable income (thereby qualifying her for future Social Security benefits to which she is not entitled). Such communications are not privileged because they concern their joint criminal activity—that is, fraud—against both SSI, which paid B.B. for work the Bartletts falsely claimed she performed, and the United States, which will pay B.B. social security benefits based on social

security withholdings on claimed income she did not earn. *See Sims*, 755 F.2d at 1243. (confidential marital communications are unprotected when they pertain to "joint criminal activity"). And, even were the Court to recognize a confidential marital communications privilege, the government may still call B.B. as a witness to testify about facts other than her communications with defendant Jeffrey Bartlett (e.g., that she did not work at SSI, but nonetheless signed timesheets indicated she did and filed joint tax returns with defendant Jeffery Bartlett that included SSI payments to B.B.).

2.     J.S. – current spouse to defendant Jeffrey Bartlett

Neither J.S. nor defendant Jeffrey Bartlett may assert either marital privilege because they have never been in a valid marriage recognized by state law. *See Lustig*, 555 F.2d at 747 (neither applies where there is no valid marriage, as determined by state law).

3.     J.B. – current spouse to defendant Brian Bartlett

Either J.B. or defendant Brian Bartlett may assert the marital confidential communications privilege for such communications while they were married. J.B. may separately assert the adverse spousal testimony privilege.

Should either J.B. or defendant Brian Bartlett assert the marital confidential communications privilege, it should not apply to any communications about: (1) Brian's signing false SSI timesheets in J.B.'s name indicating that J.B. worked there; (2) SSI paying J.B. for work she did not perform for SSI; and (3) J.B. and defendant Brian Bartlett's filing false annual tax returns that reported SSI payments to J.B. as earned and taxable income (thereby qualifying her for future Social Security benefits to which she is not entitled). Such communications are not privileged because they concern their joint criminal activity—that is, fraud—against both SSI, which paid J.B. for work the Bartletts falsely claimed she performed, and the United States, which will pay J.B. social security benefits based on social security withholdings on claimed income she did not earn. *See Sims*, 755 F.2d at 1243. (confidential marital communications are unprotected when they pertain to "joint criminal activity"); *See Van Drunen*, 501 F.2d at 1396–97 (applying joint criminal activity exception to the privilege against adverse spousal testimony).[1] And, even were the Court to recognize a

---

[1] To the government's knowledge, the Sixth Circuit has neither recognized nor rejected the joint criminal activity exception to the privilege against adverse spousal testimony. The rationale for recognizing and applying the exception for both exceptions applies equally here—namely, (1) the goal of protecting the marriage

confidential marital communications privilege, the government may still call J.B. as a witness to testify to facts other than her communications with defendant Brian Bartlett (e.g., that she did not work at SSI, did not sign timesheets depicting her initials, and filed joint tax returns with defendant Brian Bartlett that included SSI payments to J.B.).

Likewise, should J.B. assert the adverse spousal testimony privilege, the Court should find such privilege inapplicable because J.B. and defendant Brian Bartlett engaged in joint criminal activity.

4.    C.T. – spouse of defendant Anthony Thelan

Either C.T. or defendant Thelen may assert the marital confidential communications privilege for such communications while they were married. C.T. may separately assert the adverse spousal testimony privilege.

Should either C.T. or defendant Thelen assert the marital confidential communications privilege, it should not apply to any

---

should not insulate a defendant from enlisting the aid of his spouse in a criminal enterprise without fear of creating a potential witness against him; and (2) any rehabilitative effect that the marriage may have on a defendant is diminished because he and his spouse were jointly engaged in fraud against SSI and the U.S. *See Sims*, 755 F.2d at 1241 (setting forth rationale for joint criminal activity exception).

communications about: (1) C.T.'s signing, at defendant Thelen's direction, false SSI timesheets indicating that C.T. worked there; (2) SSI paying C.T. for work she did not perform for SSI; and (3) C.T. and defendant Thelen's filing false annual tax returns that reported SSI payments to C.T. as earned and taxable income (thereby qualifying her for future Social Security benefits to which she is not entitled). Such communications are not privileged because they concern their joint criminal activity—that is, fraud—against both SSI, which paid C.T. for work the Thelens falsely claimed she performed, and the United States, which will pay C.T. social security benefits based on social security withholdings on claimed income she did not earn. *See Sims*, 755 F.2d at 1243. (confidential marital communications are unprotected when they pertain to "joint criminal activity"); *See Van Drunen*, 501 F.2d at 1396–97 (applying joint criminal activity exception to the privilege against adverse spousal testimony).  And, even were the Court to recognize a confidential marital communications privilege, the government may still call C.T. as a witness to testify to facts other than her communications with defendant Thelen (e.g., that she did not work at

SSI, did not sign SSI timesheets, and filed joint tax returns with defendant Thelen that included SSI payments to C.T.).

Likewise, should C.T. assert the adverse spousal testimony privilege, the Court should find such privilege inapplicable because C.T. and defendant Thelen engaged in joint criminal activity.

5.    S.B. – spouse of defendant Adam Ball

Either S.B. or defendant Ball may assert the marital confidential communications privilege for such communications while they were married. S.B. may separately assert the adverse spousal testimony privilege.

Should either S.B. or defendant Ball assert the marital confidential communications privilege, it should not apply to any communications about: (1) S.B.'s signing, at defendant Ball's direction, false SSI timesheets indicating that S.B. worked there; (2) SSI paying S.B. for work she did not perform for SSI; (3) S.B.'s 20% ownership interest in National Elevation Company d/b/a "Southfield IT Group," which served as a means of equalizing annual profit distributions to defendant Ball; and (4) S.B. and defendant Ball's filing false annual tax returns that reported SSI payments to S.B. as earned and taxable

18

income (thereby qualifying her for future Social Security benefits to which she is not entitled). Such communications are not privileged because they concern their joint criminal activity—that is, fraud—against SSI, which paid S.B. for work the Balls falsely claimed she performed, and the United States, which will pay S.B. social security benefits based on social security withholdings on claimed income she did not earn. *See Sims*, 755 F.2d at 1243. (confidential marital communications are unprotected when they pertain to "joint criminal activity"); *See Van Drunen*, 501 F.2d at 1396–97 (applying joint criminal activity exception to the privilege against adverse spousal testimony). And, even were the Court to recognize a confidential marital communications privilege, the government may still call S.B. as a witness to testify to facts other than her communications with defendant Ball (e.g., that she did not work at SSI, nonetheless signed SSI timesheets, was a 20% owner of SITG but did no work there, and filed joint tax returns with defendant Ball that included SSI payments to S.B.).

Likewise, should S.B. assert the adverse spousal testimony privilege, the Court should find such privilege inapplicable because S.B. and defendant Ball engaged in joint criminal activity.

      6.    T.S. – spouse to defendant Andrew Semenchuk

Either T.S. or defendant Semenchuk may assert the marital confidential communications privilege for such communications while they were married. T.S. may separately assert the adverse spousal testimony privilege.

Should either T.S. or defendant Semenchuk assert the marital confidential communications privilege, it should not apply to any communications about: (1) T.S. never performing any work for SSI or any SSI Group entity; (2) T.S. receiving approximately $776,000 in checks from SITG that was characterized as "loans" but that the Semenchuk never intended to repay to SITG; (3) T.S.'s endorsement of those checks and their having been deposited in a bank account in T.S.'s name; and (4) the Semenchuks not reporting the $776,000 in their annual jointly filed taxes. Such communications are not privileged because they concern their joint criminal activity—that is, fraud against the United States in falsely characterizing such payments as a "loan"

20

and failing to report them on their annual jointly filed taxes. *See Sims*, 755 F.2d at 1243. (confidential marital communications are unprotected when they pertain to "joint criminal activity"); *See Van Drunen*, 501 F.2d at 1396–97 (applying joint participants exception to the privilege against adverse spousal testimony).  And, even were the Court to recognize a confidential marital communications privilege, the government may still call T.S. as a witness to testify to facts other than her communications with defendant Ball (e.g., that she did no work for SSI or SITG, received checks from SITG in the approximate amount of $776,000, never paid the that amount back to SITG, and never reported the income on her annual taxes).

Likewise, should T.S. assert the adverse spousal testimony privilege, the Court should find such privilege inapplicable because T.S. and defendant Semenchuk engaged in joint criminal activity.

## Conclusion

For the reasons outlined above, any assertion of the marital privileges to preclude the anticipated trial testimony of the above witnesses is unavailing. Because the government has not yet decided whether it will actually call these witnesses at trial, it respectfully

submits that the defendants need not respond to this motion immediately, subject to the Court's direction.

Respectfully submitted,

DAWN N. ISON
United States Attorney

 /s/ T. Patrick Martin
T. Patrick Martin
Karen Reynolds
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Thomas.Martin@usdoj.gov
(313) 226-9168
MI Bar No. P86940

March 31, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2025, I electronically filed the

foregoing paper with the Clerk of the Court using the ECF system,

which will send notification of such filing to the attorneys of record.

> _/s/ T. Patrick Martin_
> T. Patrick Martin
> Assistant United States Attorney
> 211 W. Fort Street, Suite 2001
> Detroit, MI 48226
> Thomas.Martin@usdoj.gov
> (313) 226-9168
> MI Bar No. P86940