## VOIR DIRE

### I.  INTRODUCTION

Welcome. My name is Thomas Ludington. I am a United States District Judge for the Eastern District of Michigan, Northern Division. I will be overseeing the jury selection and trial.

In a moment, we will begin the process of selecting a jury for this trial. You've already met our court security officers when you entered the building this morning. But I would also like to introduce some of the personnel now in the courtroom, whom you will see during jury selection and the trial.

The woman to my right and your left, Carol Harrison, is a certified court reporter. She will be taking down everything that is said during the trial on her stenotype machine. The main reason for the court reporter's record of the proceedings is for appellate review by the Sixth Circuit; it is not really for our use during the trial. But it becomes necessary during the trial to determine what an exact question was or what an exact answer was, and she can retrieve the relevant portion of the record. But the retrieval process is not as easy as you might think. Mrs. Harrison cannot just push a button and a transcript comes out: it takes much work to get a clean and accurate transcript. There will not be a transcript of the proceedings available for you during deliberations. That's why it's very important for you to pay close attention to the testimony and exhibits as they are presented to you.

- 1 -

The woman sitting directly in front of me is my case manager, Kelly Winslow. Ms. Winslow assists in selecting the jury and is responsible for the ongoing business of the court, keeping the court's docket moving, setting hearings, and keeping track of the progress of cases. After we select the jury, Ms. Winslow will return to her office to continue with her duties of managing the court's schedule.

In addition, I have two law clerks that you might see from time to time, Shawn Brew and Nick Foulon. Mr. Brew is the bailiff for this case. The term law clerk does not fairly represent who they are and what they do. They are attorneys who have completed law school and are members of the bar, who are licensed to practice law. They are employed with the court for a two-year term, and they do legal research and writing for the court for a wide array of cases. They ensure that my explanations of the law are accurate and complete.

Law clerks and other personnel might enter and exit the courtroom from time to time, and they might be relaying information that could have nothing to do with this case. Don't let the movement of staff take away your attention from the important business of the trial; try to stay focused on the witnesses, exhibits, and evidence presented.

(*Panel sworn by case manager*)

## II. JUROR QUALIFICATION (28 U.S.C. § 1865)

I have a few questions to ask you to determine your qualifications to serve as jurors in this court. If at any time during these questions or any later questions, you feel that your answer might be too personal to state in front of others, you can raise your hand, and we can do what is referred to as a side bar, where we can speak more privately up here next to the bench.

Please indicate a positive response by raising your hand. For the jurors in the overflow rooms, please write down your response to discuss when you are brought into the courtroom.

1. Are any of you NOT citizens of the United States? (Either say I see no hands, or address any hands raised, release from duty if disqualified.)

2. Have any of you NOT resided in the Eastern District of Michigan, Northern Division, for at least one year? The Northern Division of the Eastern District of Michigan includes the following counties: Alcona, Alpena, Arenac, Bay, Cheboygan, Clare, Crawford, Gladwin, Gratiot, Huron, Iosco, Isabella, Midland, Montmorency, Ogemaw, Oscoda, Otsego, Presque Isle, Roscommon, Saginaw, and Tuscola.)

3. Are any of you under 18 years of age?

4. Are any of you unable to read, write, or understand the English language?

5. Are any of you physically or mentally incapable of carrying out the functions of a juror?

6. Have any of you been convicted of a felony?

7.  Do any of you have a felony charge pending against you?

8.  Do any of you have a serious back or other problem such that you would be unable to sit for two hours at a time?

9.  Sometimes jurors have medical issues that would make them unable to sit as jurors. I want to ask you about the two most common ones:

    a.  Is there anyone who has serious back problems that would make you unable to sit for two to three hours at a time?

    b.  Do any of you have a serious hearing impairment?

10. Do you have any other serious medical issues you believe will impair your ability to sit as a juror?

## III. CRIMINAL CASE OVERVIEW

### A.      Nature of Criminal Cases

This is a criminal case. As you might know, the cases that are tried in this Court divide into two divisions: civil and criminal. In a criminal case, the Government, which in this Court means the United States, alleges that a certain person, referred to as the defendant, violated a criminal statute of the United States. A statute is considered criminal if it includes an element of punishment, such as a fine, imprisonment, or another penalty.

In federal court, criminal cases begin with the filing of an indictment or an information. Both documents contain the Government's statement of charges alleged against the defendant or defendants. This case began with the filing of an indictment. Each of the crimes contained in the operative indictment in this case is alleged to have occurred, at least in part, in the Eastern District of Michigan.

### B.      Recitation of Charges

(*DO NOT mention whether the charges are felonies or misdemeanors, DO NOT mention penalties*)

### COUNT ONE
Conspiracy to Commit Wire Fraud
(18 U.S.C. § 1349)

In COUNT I, the indictment charges that, on or about February 25, 2011 through at least June 2019, Defendants Jeffrey Bartlett, Andrew Semenchuk, Adam Ball, Brian Bartlett, and Anthony Thelen knowingly and voluntarily combined,

conspired, and agreed with each other and others to commit the crime of wire fraud.

That is, Defendants knowingly and with the intent to defraud conspired to devise a

scheme to defraud and deprive another of money or property by means of false

material pretenses through the use of wire communications in interstate commerce,

such as emails and writings.

### COUNT TWO
Conspiracy to Defraud the United States
(18 U.S.C. § 371)

In COUNT II, indictment charges that, on or about February 25, 2011 through

at least June 2019, Defendants Jeffrey Bartlett, Andrew Semenchuk, Adam Ball,

Brian Bartlett, and Anthony Thelen knowingly and voluntarily combined, conspired,

and agreed with each other and others to defraud the United States Department of

Transportation, a federal executive agency.

### COUNTS III–XIV
Wire Fraud, Aiding and Abetting
(18 U.S.C. §§ 1343, 2)

In COUNTS III THROUGH XIV, the indictment charges that Defendants

Jeffrey Bartlett, Andrew Semenchuk, Adam Ball, Brian Bartlett, and Anthony

Thelen knowingly devised and executed, and aided and abetted each other in

devising and executing a scheme to defraud and to obtain money from the Michigan

Department of Transportation (MDOT) by means of false and fraudulent material

pretenses, representations, and promises.

In COUNT III, the indictment alleges that, on December 7, 2018, Defendants Jeffrey Bartlett, Andrew Semenchuk, Adam Ball, Brian Bartlett, and Anthony Thelen caused a $6,824.16 wire transfer from MDOT's bank account with an intent to defraud.

In COUNT IV, the indictment alleges that, on December 10, 2018, Defendants Jeffrey Bartlett, Andrew Semenchuk, Adam Ball, Brian Bartlett, and Anthony Thelen caused a $19,545.10 wire transfer from MDOT's bank account with an intent to defraud.

In COUNT V, the indictment alleges that, on December 12, 2018, Defendants Jeffrey Bartlett, Andrew Semenchuk, Adam Ball, Brian Bartlett, and Anthony Thelen caused a $73,038.61 wire transfer from MDOT's bank account with an intent to defraud.

In COUNT VI, the indictment alleges that, on December 12, 2018, Defendants Jeffrey Bartlett, Andrew Semenchuk, Adam Ball, Brian Bartlett, and Anthony Thelen caused a $116,353.50 wire transfer from MDOT's bank account with an intent to defraud.

In COUNT VII, the indictment alleges that, on December 12, 2018, Defendants Jeffrey Bartlett, Andrew Semenchuk, Adam Ball, Brian Bartlett, and Anthony Thelen caused a $26,139.49 wire transfer from MDOT's bank account with an intent to defraud.

In COUNT VIII, the indictment alleges that, on December 19, 2018, Defendants Jeffrey Bartlett, Andrew Semenchuk, Adam Ball, Brian Bartlett, and Anthony Thelen caused a $125,351.21 wire transfer from MDOT's bank account with an intent to defraud.

In COUNT IX, the indictment alleges that, on December 19, 2018, Defendants Jeffrey Bartlett, Andrew Semenchuk, Adam Ball, Brian Bartlett, and Anthony Thelen caused a $80,238.15 wire transfer from MDOT's bank account with an intent to defraud.

In COUNT X, the indictment alleges that, on June 21, 2019 Defendants Jeffrey Bartlett, Andrew Semenchuk, Adam Ball, Brian Bartlett, and Anthony Thelen caused a $75,451.26 wire transfer from MDOT's bank account with an intent to defraud.

In COUNT XI, the indictment alleges that, on June 27, 2019 Defendants Jeffrey Bartlett, Andrew Semenchuk, Adam Ball, Brian Bartlett, and Anthony Thelen caused a $120,391.62 wire transfer from MDOT's bank account with an intent to defraud.

In COUNT XII, the indictment alleges that, on July 25, 2019 Defendants Jeffrey Bartlett, Andrew Semenchuk, Adam Ball, Brian Bartlett, and Anthony Thelen caused a $105,143.78 wire transfer from MDOT's bank account with an intent to defraud.

In COUNT XIII, the indictment alleges that, on July 25, 2019 Defendants Jeffrey Bartlett, Andrew Semenchuk, Adam Ball, Brian Bartlett, and Anthony Thelen caused a $65,103.49 wire transfer from MDOT's bank account with an intent to defraud.

In COUNT XIV, the indictment alleges that, on July 29, 2019 Defendants Jeffrey Bartlett, Andrew Semenchuk, Adam Ball, Brian Bartlett, and Anthony Thelen caused a $61,935.75 wire transfer from MDOT's bank account with an intent to defraud.

## C.     Presumption of Innocence & Burden of Proof

All Defendants have pleaded not guilty to the crimes charged in the indictment. The indictment is just a charging document, it is not evidence of guilt in any way. Instead, it is simply the formal way that the government *tells* the defendant what crimes he is *accused* of committing. It does not even raise any suspicion of any Defendants' guilt.

Instead, Defendants start the trial with a clean slate, with no evidence at all against them, and the law presumes that they are innocent. You must also presume that they are innocent. This presumption of innocence stays with each Defendant unless and until the Government presents sufficient evidence here in court to overcome that presumption and to convince you beyond a reasonable doubt that he is guilty.

This means that each Defendant has no obligation to present any evidence at all. Defendants do not need to prove their innocence. Instead, it is up to the Government to prove that each Defendant is guilty and this burden stays on the Government from start to finish. You must find each Defendant not guilty unless the government convinces you *beyond a reasonable doubt* that he is guilty.

Indeed, the government must prove every element of the crimes charged *beyond a reasonable doubt*. Proof beyond a reasonable doubt does not mean proof beyond all possible doubt. Possible doubt or doubts based purely on speculation are not reasonable doubts. A reasonable doubt is a doubt based on reason and common sense. It may arise from the evidence, the lack of evidence, or the nature of the evidence.

## IV.    INTRODUCTION OF PARTIES, COUNSEL, AND CASE

Next, I want to introduce the Parties in the case and their Attorneys. The United States Government is represented by Attorneys Karen Reynolds and Thomas Martin. Defendant Jeffrey Bartlett is represented by Attorneys Joshua Blanchard and Mark Kriger. Defendant Andrew Semenchuk is represented by Attorneys Daniel Gerdts and Steven Kessler. Defendant Adam Ball is represented by Attorney Mark Satawa. Defendant Brian Bartlett is represented by Attorneys James Amberg and Mark Kriger. And Defendant Anthony Thelen is represented by Attorneys Brian Lennon and Charles Chamberlain.

From time to time, I might address the attorneys as counsel, which is simply another word for attorney.

We expect the trial to last no more than seven weeks, beginning Monday, September 15, and concluding no later than Monday, November 3. But, out of respect for your time, the Attorneys will work hard to ensure the trial will proceed as efficiently as possible, and will aim to complete the trial in six weeks. Each day trial will begin at 9:00 AM and will conclude around 1:00 PM. To the extent your presence will be required into the late afternoon, we will be sure to let you know well in advance.

Each side in the trial is entitled to jurors who approach the case with open minds and agree to keep their minds open until they have heard the evidence,

considered the law that applies to the case, and considered the opinions of their fellow jurors. Jurors must be as free as humanly possible from bias, prejudice, or sympathy for either side. Jurors must also not be influenced by things that they might have read or heard about or by the people that they know. Although you might be qualified as a juror, there might be something that could disqualify you in a particular case or make it harmful or prejudicial for you to serve.

The jury is an important part of our court system. In criminal cases, the United States Constitution provides for the right of a trial by jury of twelve impartial persons. Each side is entitled to jurors who approach the case with open minds and who agree to keep their minds open until a verdict is reached. Jurors must be as free as humanly possible from bias, prejudice, or sympathy for either side and must not be influenced by things they have read or heard about, or by persons they may know. Although you may be qualified to serve as a juror in general, there may be something that could disqualify you in a particular case or could make it harmful or prejudicial for you to serve.

A trial begins with the selection of a jury. The purpose of this selection process is to obtain information about you so that a fair and impartial jury can hear this case. During this first step, the Court will ask you questions. The questions are designed to discovery if you have any information concerning the case, or any opinions which you cannot overlook, or if you have had person experience in your individual lives

which might cause you to favor or disfavor one side or the other, or persons who may be witnesses.

The questions which I will ask you may seem personal as we will be asking about your attitudes, beliefs, and experiences. Such questioning in not for the purpose of prying into your private lives; instead, such questioning is required by law to assist the court and the attorneys in the selection of an impartial jury. And although some of these questions may seem repetitive to those you have already answered in the Juror Questionnaire, it is important to repeat some information here, in open court.

If you do not hear or do not understand a question, you would say so. You should answer all questions truthfully and completely.

Please do not hesitate to speak freely about any matter which you believe the court should know.

During the voir dire, jurors may be excused by the court for cause; that is, the court may decide that there is a valid reason why a juror cannot or should not serve in this case. In addition, the attorneys for each side have a legal right to excuse a limited number of jurors without giving any reason for doing so. Please don't feel bad or take it personally if you are excused from service. The court, the attorneys, and the parties greatly appreciate your being here, and if you are excused, this is just

part of the procedure, and the attorneys are just following through on their obligation to their clients.

Ms. Winslow, our case manager, received a list of all the jurors appearing this morning. She will now read the names of the first 18 persons, randomly selected, who will be seated in the jury box, as well as additional individuals to be seated on the floor.

***(Case Manger will call the first 32 names and direct them to their seat)***

## V. VOIR DIRE

At this time, we will begin voir dire. Even if you are not seated in the jury section, please listen to the questions asked by the court and the attorneys because you might be seated later in the jury section, and I will ask you how you would have answered any of the questions raised here.  If you are not in the jury section, feel free to write your answers down.

1. *(Have jurors answer the following questions*.)

    a. Name;
    b. Occupation and employer;
    c. If retired, former occupation and employer
    d. Residential community;
    e. Martial status and name of spouse, if married.
    f. Occupation and employer of spouse, if married.
    g. Ages of children, if any;
    h. Education;
    i. Membership in clubs or organizations;
    j. Magazine, newspaper, website, or online subscriptions.

2. *(Have counsel read witness lists)*.

3. *(For the 18 jurors seated in the box ONLY, ask the following questions and ask attorneys for cause strikes at the end*.)

    a. Do any of you know, or have you had any contact whatsoever, with:
        i.   Parties?
        ii.  Attorneys?
        iii. Witnesses?
        iv.  Any other potential jurors?

    (***Either say I see no hands, or address any hands raised***)

b.  Do any of you know, or have you heard anything about this case?

c.  Have any of you, your friends, your relatives, or acquaintances ever been involved with, or charged, in a similar case or episode as the one charged in this case?

d.  Have any of you, or any member of your family or a close friend, even been involved in a legal matter in any court, either as a plaintiff, defendant, witness, or victim?

   If yes:
   - Did you form any impression about the way they were treated?
   - Was there anything about that, that would particularly influence your role as a juror in this case?
   - Anything about that experience that you think would in any way affect your role as a juror here?

e.  Have any of you ever sat on a jury before?
   If yes:
   - state the court and type of case, whether it went to verdict, and what the verdict was. How long ago was this?
   - Would this experience affect in any way your ability to render a fair and impartial verdict in this case?
   - Were you the foreperson of the jury?

f.  Do any of you hold any opinions about courts or lawyers that would prevent you from fairly considering and deciding this case solely about the criminal justice system, that would make it difficult for you to be a juror in this case?

g.  Do any of you have any interest, bias, or prejudice, or preconceived ideas either for or against: persons accused of a crime, federal officials, federal agencies, business owners, or professionals who might testify as witnesses, like doctors or professors?

h.  Do any of you have any religious, philosophical, or personal reasons preventing you from judging the conduct of another person?

i.  Do any of you have any legal training?
- If yes, would that training make it difficult for you to set aside any knowledge you have and rely solely on the instructions given to you?

j.  Your function as jurors is to decide questions of fact; when it comes to the law, however, you are to take your instructions from me, and you are bound by the instructions that I give you. You cannot substitute your notions for what you think that law is or should be even if you disagree with what I tell you what the law is. Do you all understand this? Does anyone not understand this?

k.  Would any of you have any difficult deciding this case solely on the evidence presented in this courtroom and on my instructions on the law?

l.  Would any of you have difficulty following the rule of law that a person who stands accused of a crime is presumed innocent, that the accused has no obligation to prove his innocence, and that the burden is always on the government to prove the charges contained in the indictment beyond a reasonable doubt?

m.  As I explained, the government is required to prove that each Defendant is guilty beyond a reasonable doubt. Would any of you require the Government to prove more than the court tells you is required to prove in terms of the Government's burden of proof? That is, do any of you feel that the Government must prove a person guilty beyond all possible doubt or beyond a shadow of a doubt, rather than beyond a reasonable doubt?

n.  Are there any among you who think that if they hear two different stories in court that they could never determine who was telling the truth, and it would automatically equal reasonable doubt?

o.  Do any of you have any circumstance in your person life that would prevent you from giving your full attention to this case? Are there any among you who simply do not want to sit as a juror in this case for any reason?

p.   I will instruct you that you may not discuss this case with anyone, even your spouse, close friends and family, until the trial is completely finished and a verdict has been reached. You may not even discuss the case with your fellow jurors until all the evidence has been presented and the court gives you the final instructions on the law and tells you that you can begin your deliberations. You must also avoid any reports in the news about the case, if there are any, during the trial. Is there anyone who would not be able to follow these instructions?

q.   Is there anyone who could not sit as a fair and impartial juror in this case—in other words, is there anyone who could not decide the case solely on the evidence you hear in the courtroom and the instructions on the law that I will give you during and at the end of the trial?

**4. Government's Voir Dire, Followed by Defendant's**

The Government has **6** peremptory strikes, plus **3** additional peremptory strikes for alternates

The Defense has **10** peremptory strikes, plus **3** additional peremptory strikes for alternates.

**5. Conclusion and Swearing-In**

(***Once jury is panel is finalized, have case manager swear in jury***)

**Ask the jury to stand:** "Do you solemnly swear that you will well and truly try the issues joined in this cause now here pending, and a true verdict render according to the law and evidence given to you in open court?." **Ask the jury to be seated**.

As a reminder, you are prohibited from talking about the case and learning more about the case via the internet. So, during the upcoming recess—and all recess throughout trial—please do not discuss the case with anyone, and do no use your cellphones or other technology.

**Take a recess and have the jurors in the box remain seated so that the clerks can show them the jury room and get them set up**.