UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

v.                           Case No. 23-CR-20676
                                 Hon. Thomas L. Ludington

BRIAN BARTLETT,

               Defendant.

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

### 3553(a) Factors

The factors set forth in 18 U.S.C. § 3553(a) that guide a judge in determining the appropriate sentence since the Supreme Court's landmark decision in *United States v. Booker,* 543 U.S. 220 (2005) are certainly well known to this Court, as is the requirement that the Court "impose a sentence sufficient, but not greater than necessary, to comply with" the factors set forth in 18 U.S.C. § 3553(a)(2).

For the reasons more fully explained below, counsel submits that based on Mr. Bartlett's lack of a prior record, his acceptance of responsibility, and his devotion to his family and the community, a sentence of probation would be "sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a)."

**1.** **The nature and circumstances of the offense and the history and characteristics of the defendant**

a. The nature and circumstances of the offense

The Presentence Investigation Report (PSIR) accurately sets forth the offense conduct and undersigned counsel see no reason to reiterate what is already contained in the PSIR. Suffice it to say, the offense conduct is serious. It should be noted, however, that Mr. Bartlett was not involved in the pre-qualification process and he worked primarily in the field doing suveying and engineering work. That is not to say, of course, that he had no knowledge of or participation in SSI's wrongdoing.

Moreover, SSI and Mr. Bartlett have taken concrete steps to make sure that the conduct which led to the indictment will not repeat itself. Although Mr. Bartlett still has an ownership interest in SSI, his shares in SSI have been placed in an irrevocable trust and he is prohibited from working "on USDOT and federally-funded MDOT projects." Non-prosecution Agreement p. 3, Section 2 (i).   (A copy of the non-prosecution agreement has been supplied to the Court by the Government.).   In addition, under the non-prosecution agreement, SSI has been restructured and "an independent corporate Board of Directors now exercises corporate-level operational control and oversight over the Company and none of the Indicted Employees. . .have

2

a majority ownership interest in the Company or serve as officers or managers at the Company. . ." *Ibid*

The non-prosecution agreement, also requires SSI is to implement a strict compliance program "designed to prevent and detect the fraudulent submission of claimed overhead expenses for reimbursement directly to MDOT or indirectly to USDOT through MDOT, throughout its operations, including those of its affiliates, agents, and joint ventures, and including its subcontractors, in so far as to the vetting of such subcontractors to ensure that the same are not affiliated or under common control with, or otherwise controlled by, the Company. . ." *Id* at p. 8, Section 8.

b. The history and characteristics of the defendant

Determining the appropriate sentence under the factors set forth in 18 U.S.C. § 3553(a), has been described as "a holistic endeavor." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). This description seems altogether apt, in light of the way in which a fair and just sentence should take into account the defendant's life as a whole, and not merely what he or she has done wrong. Lives, and the people who live them, are, after all, three-dimensional, and any judgment about a person and his or her life - or about the appropriate consequences of their wrongdoing - should incorporate that understanding.

3

At the same time, the stories of some people's lives are dominated by an identifiable narrative or characteristic.  In Brian Bartlett's life, as the letters of support attached as Exhibit One attest, it is a combination of related qualities - hard work, caring for the community and others, and, most particularly, his family - that tell the story.

One essential truth about Brian Bartlett is that his family is central to his life. As Jessica Bartlett, his wife of 21 years, with whom he has six children (two from a previous marriage of hers) writes: "Brian's dedication to his family, work and community are very important. These are best qualities that describes him."  Of particular import, Ms. Bartlett writes, is his involvement with their severely disabled son Grant:

> A big part of our family is our special-needs son, Grant, who suffers from foxg1 syndrome, a rare genetic disorder. This has left Grant severely disabled. He is unable to speak, walk, feed or bathe himself, and must wear diapers because he is unable to use the toilet. In short, he needs 24 hour care. He has a specific schedule that he is kept on so he does not have seizures and stays healthy because when he gets sick it's very hard on him and it takes him much longer to recover. I am Grant's primary care giver but Brian plays a critical role in providing Grant with activities that improve his quality of life, particularly on the weekends. Brian takes Grant fishing, and on Gator rides in the woods. These routine things keep Grant's life vibrant. Grant loves hearing his dad's voice and rolling around with him. You can see it in his face when Brian is with him. I cannot imagine Grant not hearing his dad's voice daily. Routine is so important for Grant. Grant has taught our family so much, we are a very close family we have Sunday dinners every Sunday to

4

catch up with our kids and 5 grandkids. When Brian spends time with Grant, it gives me a much needed respite.

These thoughts are echoed by his mother (and "stout supporter"), Marianne Bartlett, who recalls that "he was and is a small town farm boy who got up at 5 am to feed calves prior to going to school and then came home to feed again prior to being able to go to sport practice or game:"

Brian is a great father of 6 and has been there for all of his kid's sports activities and has ensured the school was able to support the sports they were involved with by contributing continually as needed.

As to his involvement with his son Grant, Ms. Bartlett observes:

Brian is very dedicated to his developmentally challenged son (Grant). He has ensured that from the very start when diagnosed that Grant was taken to physical therapy, occupational therapy and speech therapy and so Grant is the only child with his diagnosis of Fox-G-1 syndrome to be able to sit up and eat soft foods. Otherwise, he needs complete and total care. All this without the outside help of any funding type, especially the government. This has been going on for 17+years now which allows Grant to be a happy and content boy. Brian ensures Grant gets to enjoy being outside when he can as Brian takes him on either a truck or a side by side ride at least 1-2 times a week. I have never heard him talk as if this was any kind of burden to him or his family at all.

His step-daughter, Laken Brink, likewise speaks glowingly of his dedication to his family, "both a parent and a mentor:"

One of the most important life lessons he taught me was the value of hard work and persistence. When looking back, I have memories of him balancing his full-time job and providing a home for our large family. He always put in the extra effort to ensure our family was supported and

5

our needs were met financially, even if that meant working weekends or out of town to keep his paycheck coming in. He taught me life lessons about showing up and working hard for what you want in life

\* \* \*

Furthermore, he instilled in me a strong sense of responsibility and stewardship. He taught me that with each harvest comes gratitude and respect. The comprehensive lessons included not only the thrill of the hunt, but also the hard work of preparation, safety, and responsibly. These principles have translated directly into my personal and professional life, shaping my work ethic and my interactions with others today.

In conclusion, these qualities—hard work, reliability, respect and supportiveness are a core part of who I am today, and I credit Brian's consistent example of his traits and parenting for that. His commitment to his family in the ways he can connect with us is a valuable testament to his character.

Similarly, his cousin, Elisa Dack, writes:

I have known him my entire life, not only as family but also as someone I deeply admire for his integrity, work ethic, and the positive role he plays in the community.

Brian has built and operates a successful business that provides jobs and stability to many families. He takes considerable pride in his work, and his commitment to fairness and honesty is evident in the way he treats his employees, customers, and those around him. Beyond his professional life, he has always been a caring and dependable family member, someone I know I can count on in times of need. It is funny how when we are kids with not a care in the world we never think about growing up and how relationships can change- I wish we could freeze those moments in time. One thing that has held steadfast and true of both Brian and his brother Jeff as my first cousins is that there has never been a time, even after growing up, when I have not felt loved and supported even though time and the directions of careers and families

6

may be different. Brian cares deeply for his family, he is an amazing husband, and a wonderful father and now grandfather.

And from family friend Terri Habig come these observations:

Brian's wife, Jessica, was widowed at a young age. She had two young children when Brian married her. I watched as he stepped in and raised those two children as his own. He has forged a strong and healthy bond with each of his children. He is very dedicated to his family and their well being. Brian and Jessica have a son with severe developmental challenges. He is non-verbal, unable to walk and cannot care for himself. Most families would institutionalize a child with this level of disability. But not Brian. He invests his personal time in making sure Grant receives a high quality of care and therapy. Brian has forgone vacations and personal opportunities so that Grant's needs are met on a daily basis. Brian has shaped a family that brings people together. When it was my turn to start a family, I looked to him as an example. I too was going to be a stepparent and wanted to build the same kind of foundation with my new children.

Similarly, Shawn Michael Mezey, who has known Mr. Bartlett "since early grade school" writes of Mr. Bartlett's dedication to his community:

In addition to his exceptional work ethic, Brian has been an active and supportive member of his local community. He consistently goes above and beyond to contribute, whether through local sponsorships or providing assistance to community-driven initiatives. His efforts have had a tangible and positive impact on the lives of many, and his generosity and sense of social responsibility set him apart as a true asset to those around him. I believe Brian's dedication, both personally and professionally, makes him an important person to his family and community. His tireless support for others, coupled with his personal values, position him to continue to make a significant contribution to our work force and community and beyond.

7

Both current and former employees speak similarly of his fairness, leadership, open-handedness, and his community service.  Thus, Stacie E. Proctor, "a distant relative of the Bartletts"who currently serves as Treasurer at Surveying Solutions, describes him  as "that person that would be there to help anyone in a time of need," and writes:

> Brian is one of the most hardworking individuals I know. Although he is an owner of SSI, he has always worked many hours, many of them on the job, right alongside our employees. As hardworking as Brian is, I also know that family is of great importance to him and he finds the time to spend with them. He loves to cook meals and enjoy his children and grandchildren. He is especially devoted to Grant, his disabled 18-year-old son. He tells me often that Sundays are he and Grant's day to go for a ride together, just the two of them.
>
> Brian is a big supporter of our community. He is the one who organizes things such as putting up "Go SSC" signs around town for our football team or getting multiple businesses to donate to a bus to send athletic teams to state tournaments. He has also donated his time to help build a pickle ball court at our community center and build six ball fields at our township park. One of the greatest things he started several years ago and continues is providing a Christmas dinner for those in need in our town. Our employees come together and package individual hot dinners for people to pick up on Christmas Eve.

And Jared A. Yenna, who has "known Brian for 30 of my 46 years breathing on this beautiful earth," reports:

> I now have been employed at SSI for 20 years.  I hope my letter helps paint a picture of the dedicated family man, hard worker, friend, and community minded individual Brian is. Many people only could know

8

Brian in one of these roles. I can say personally it's been great knowing him in all he does.

Here at SSI, we work plenty of hours. Brian is driving force for this. Not because he is a whip cracking boss, rather attested to Brian's hard work himself and focus on leading by example. He is the hardest worker in this company, others here see this and are more than willing to do whatever it takes to get the job done.

Similarly, Troy Harrison, a former employee who now owns his own business, observes:

Most people that have some sort of power over someone like a boss like to revel in it, or maybe feel more important or superior. Brian is not at all like that. He genuinely cares for the people that work for and with him. I am now a boss at my business, and I have used that same example with people that work for me when they introduce me to their friends and family.

The letters from the people who know Mr. Bartlett best leave no doubt that his dedication to his family and the community is heartfelt and central to his life.

**2. The "need for the sentence" to comport with the traditional purposes of punishment.**[1]

    a. Retribution.

---

[1]    The "traditional purposes of punishment . . . include retribution, rehabilitation, prevention of further crimes by the defendant, and deterrence of the defendant and others who might contemplate committing similar crimes. *Hobbs v. County of Westchester,* 397 F.3d 133, 158 (2d Cir. 2005) (citing 1 W. LaFave, Substantive Criminal Law § 1.5(a)(2d ed.2003).

The first of the statutory factors requires that the sentence imposed should "reflect the seriousness of the offense, . . .promote respect for the law, and . . .provide just punishment for the offense." Such measurements are of course difficult to draw with precision.  This offense represents Mr. Bartlett's first conviction in his 51 year life.  Even without considerations of a sentence that involves imprisonment, one possible consequence stemming from this conviction is a suspension of his surveyor/engineering license.

While counsel certainly recognizes that punishment is a factor in the sentencing calculus, he respectfully submits that a prison sentence is not necessary to satisfy this factor. A sentence that requires probation is certainly ample punishment when balanced against Mr. Bartlett's longstanding dedication to community and family, and the other 3553(a) factors. As stated by the United States Supreme Court in *Gall v. United States*, 552 US 38, 48 (2007), probation is a substantial restriction on one's liberty:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms.  Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.   See *United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); internal quotation marks omitted)). Probationers may not leave the judicial district, move, or

change jobs without notifying, and in some cases receiving permission from, their probation officer or the court.   They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking.   USSG § 5B1.3.

b.   Deterrence - General and Special

The two species of deterrence call for two kinds of analysis. As for general deterrence - the need to fashion a punishment which will deter the public at large from taking the same course of action as did the defendant - it seems reasonable to conclude that a sentence which results in Mr. Bartlett having a felony conviction, a period of probation, and the potential inability to ever again work in his lifelong field of endeavor would serve as a sufficient disincentive to others who might otherwise be tempted to engage in similar conduct.

With respect to special deterrence - the need to dissuade the defendant himself from future illegal conduct - the question is far simpler.   There is little doubt based on Mr. Bartlett's post-arrest conduct, the letters from his family and friends, his statements of remorse when interviewed by the agents during the execution of the

11

search warrant, and his statements contained in the PSIR[2], that rehabilitation is not a factor that this Court needs to be concerned with.

During the execution of the search warrant on July 25 2019, rather than stating he would like to speak with an attorney prior to being interviewed, Mr. Bartlett freely admitted his involvement in the offense and expressed his remorse. When asked by the investigating agent "specifically what was wrong," Mr. Bartlett replied, "'I'll tell ya. 2SI wrong. 3SI wrong. Southfield IT Group, wrong.' He also said, 'I'm very sorry.'" He also candidly admitted to the agents that his wife did not perform work for SSI. The FBI 302 of Brian Bartlett's interview of July 25, 2019 is attached as exhibit K to the Government's Sentencing Memorandum. To put an exclamation point on his remorse, Mr. Bartlett also wrote a letter of apology immediately after

---

[2] In the PSIR Mr. Bartlett when talking about his involvement in the offense stated as follows:

Describe how you feel about this offense?
***"I obviously regret my involvement in this offense. Unfortunately, I can't change the past but I can change the future. In the future, I will make sure that I conduct myself honestly."***

What influenced your involvement in this offense? (i.e., peers, personal circumstances)
***"I am not going to make excuses for my actions. I have only myself to blame."***
See pp.12-13, Paragraph 47 of the PSIR

being interviewed. A copy of the letter of apology is attached to the Government's sentencing memorandum as exhibit L.

c. Incapacitation.

"The rationale for incapacitation is to allow society to 'protect itself from persons deemed dangerous because of their past criminal history.'" *Allen v. Woodford,* 395 F.3d 979, 1009 (9th Cir. 2004) (citing 1 W. LaFave & A. Scott, Substantive Criminal Law 38 § 1.5 (2003)). As stated above, counsel submits that there is simply no reason for the Court to believe that the society needs to be protected from Mr. Bartlett.

d.  Rehabilitation

As explained above, Mr. Bartlett's acknowledgment of his complicity in the crime and his heartfelt remorse demonstrate that rehabilitation has already been accomplished.

3. **The kind of setnences available.**

The sentences available in this case range from probation to imprisonment.

**4 & 5. The Guideline range and any pertinent policy statements**

The plea agreement in this case calculates Mr. Bartlett's Guidelines Sentencing Range at 24-30 months and calls for a below-Guidelines sentence, not to exceed 21 months.

In the writers' view, a further downward variance, to a noncustodial sentence would be appropriate here, in light of Mr. Bartlett's, acceptance of responsibility, dedication to the community, and, most particularly, to allow him to continue his caregiving role with his developmentally disabled son, Grant - a role which, as the letters point out, is both invaluabl
2e to his son, and to his wife as well, since it provides her with much-needed respite from her own duties in regard to Grant's care.

Even under the sometime-inflexible Guidelines sentencing regime, the courts have acknowledged that extraordinary family circumstances - and it is unquestionable that Grant's condition and needs are extraordinary indeed - can work to justify a noncustodial sentence, even where the Guidelines call for incarceration. *See, e.g., United States v. Husein*, 478 F.3d 318 (6th Cir. 2007), in which the Sixth Circuit upheld a 99.91% variance - the defendant's advisory guidelines were 37-46 months, and the district court sentenced him to 270 days of home confinement and three years supervised release - where the defendant was the sole caretaker for her father who had suffered a stroke and had a myriad of other health problems which left him bedridden.

Also instructive is the Sixth Circuit's decision in *United States v. Baker*, 502 F.3d 465 (6th Cir. 2007) in which the court upheld the District Court's sentence of five years probation with the first year on home confinement based on extraordinary

family circumstances where the advisory guideline range was 27-33 months, noting that the defendant was the caregiver for another family member and that the defendant, along with his wife, shared the responsibility for caring for their son who had a heart transplant five years earlier. *Id* at 469-570.

Here, in the writers' view, Mr. Bartlett's circumstances call for a similar disposition.

In addition, it is well established that a defendant's charitable and good works are proper factors to consider in determining whether to grant a variance. *United States v. Thurston*, 544 F.3d 22, 26 (1st Cir. 2008) (affirming three month sentence where guidelines called for a 63-78 month sentence for Medicare Fraud involving a loss of over $5,000,000 based primarily on defendant's "charitable work, community service, generosity with time, and spiritual support and assistance to others."); *United States v. Tomko*, 562 F.3d 558, 571 (3rd Cir. 2009) *en banc* ("District court did not abuse its discretion in sentencing defendant to probation with a year of home detention, community service, restitution, and fine for tax evasion, rather than to a term of imprisonment based on "his negligible criminal history, his employment record, his community ties, and his extensive charitable works.).

**6. The need to avoid unwarranted sentencing disparity.**

When considering all of the 3353(a) factors, most particularly, Mr. Bartlett's

15

extraordinary family circumstances, counsel respectfully suggest that the requested sentence would not constitute an unwarranted sentencing disparity.

**7. The need to provide restitution to any victims of the offense.**

Mr. Bartlett has agreed to assign to the Government the full amount of his restitution from his 401k retirement account. In addition, he will also have fully satisfied his forfeiture obligation on or before the day of his sentence.

## CONCLUSION

Mr. Bartlett has acknowledged responsibility for the crimes he committed. It is beyond debate that his remorse is sincere. In this sentencing memorandum, counsel have attempted to convey to the court that Mr. Bartlett's life in its totality is one of service to his family and the community. A review of all the letters leaves no doubt that despite the conduct that led to his plea, Mr. Bartlett is at his core a decent and compassionate human being who deeply cares about his family and the community.

His service to the community long predates the conduct and charges in this case. While it was certainly not Mr. Bartlett's finer instincts that drew him into the conduct that has brought him before the Court, his untiring dedication to his severely disabled son and to the community cannot be feigned or dismissed as an 11th hour attempt to cast himself in a favorable light to this Court.

Counsel respectfully suggests that whatever misdeeds Mr. Bartlett has committed are far overshadowed by all the good has he done for his family and the community. Counsel respectfully suggest that a sentence of probation for a term this Court deems appropriate is "sufficient but not greater than necessary" to satisfy the factors set forth in 18 U.S.C. § 3353(a).

Respectfully submitted,

s/Mark J. Kriger                                    s/James W. Amberg
LARENE & KRIGER, PLC                     AMBERG & AMBERG
2400 Guardian Building                        32121 Woodward Ave.
500 Griswold St.                                    Suite PH
Detroit, Michigan 48226                       Royal Oak, MI 48073
(313) 967-0100                                      (248) 681-6255


DATED: November 13, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on  I caused the foregoing paper to be electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.  I also served a copy via email on Keith M. Stotts, United States Probation Officer.

s/Mark J. Kriger
LaRene & Kriger, PLC
2400 Guardian Building
500 Griswold St.
Detroit, Michigan 48226
(313) 967-0100
E-mail: mkriger@sbcglobal.net